REON LEE BOWEN, Plaintiff, v. CITY OF SCHENECTADY, HENRY C. FAGAL and Others, Comprising the Board of Contract and Supply of the City of Schenectady, Defendants.

Supreme Court, Schenectady County, March 27, 1930.

*John E. Kelly*, for the plaintiff.

*Carleton H. Lewis, Corporation Counsel*, for the defendants.

HEFFERNAN, J. On April 17, 1929, plaintiff, an architect of many years' experience, entered into an agreement with defendants by the terms of which he was to prepare plans and specifications for and supervise the construction of the Mount Pleasant High School, for which services he was to be paid on a percentage basis. Previously thereto he had made the preliminary drawings therefor.

Prior to the execution of this contract the Legislature 'enacted article 56 of the Education Law (Laws of 1929, chap. 572, in effect April 12, 1929). That statute, so far as material here, provides that in order to safeguard life, health and property, no person shall, on or after the 1st day of January, 1930, practice architecture or use the title architect unless such person shall have secured from the Regents a certificate as a registered architect in the manner therein provided (Education Law, § 1476, subd. 1). The act under consideration does not apply to any building or structure or the alteration thereto costing $10,000 or less; nor does it prevent the preparation of certain drawings by persons other than architects. Other exceptions of no relevancy in this controversy are also made (Education Law, § 1476, subd. 2). To carry out the requirements of the law provision is made for the appointment of a State Board of Examiners and Registration of Architects by the Regents upon the recommendation of the Commissioner of Education, to take office on August 1, 1929, and whose functions are to examine and recommend, or reject, applicants for licenses to

practice architecture (Education Law, § 1477). The statute prescribes the qualifications which applicants must possess, the nature of the examination to which they are required to submit, and what evidence as to character, competency and qualifications the Board may accept in lieu of an examination (Education Law, § 1478). Violation of the statutory provisions is declared to be a misdemeanor (Education Law, § 1480.)

Prior to January 1, 1930, plaintiff did not apply for examination or for a certificate of registration in compliance with article 56 of the Education Law although he had ample opportunity to do so, and consequently he has not been lawfully authorized to practice architecture since that date. The fact that he is now without the required certificate is due entirely to his omission to apply therefor.

Plaintiff, upon receipt of notice from defendants that it was their intention to cancel their contract with him because of his failure to qualify himself to practice his profession, instituted this action and obtained a temporary injunction order restraining defendants from interfering with the performance of his work. He has now applied to continue the restraining order *pendente lite*, and defendants have made a counter motion to dismiss the complaint for failure to state facts sufficient to constitute a cause of action.

The complaint alleges, in substance, that since the year 1910 and up to and including December 31, 1929, the plaintiff has practiced architecture, during a portion of which period he was employed as such in the bureau of engineering by defendant city, and that for several years he was the city architect of Schecnetady; that while he was so employed he designed and supervised the construction of a number of high schools; that on September 22, 1928, he was employed to prepare the preliminary drawings for the high school in question and that thereafter he entered into a contract with defendants to prepare plans and specifications for this structure; that he has prepared such plans and specifications, and that they have been accepted by defendants; that bids were advertised for and received by defendants for the erection of such high school in accordance with the plans and specifications prepared by plaintiff, and that contracts for the construction work have been awarded based on said plans and specifications; that a portion of the work is still uncompleted and that defendants have threatened to annul plaintiff's contract on the ground that it is illegal and void because of his failure to qualify as an architect, and that if his contract is canceled by defendants plaintiff will be greatly damaged in his reputation, and he will lose the profits to which he would be entitled under the agreement. The relief prayed for is that the contract

should be adjudged to be legal and binding and that defendants should be restrained from the cancellation thereof.

The legislative act is attacked by plaintiff as unconstitutional. It is his contention that it is a violation of that clause of the Federal Constitution which provides that " no state shall * * * pass any * * * law impairing the obligation of contracts " (U. S. Const. art. 1, § 10) and that it arbitrarily interferes with personal liberty and private property in contravention of the State Constitution (State Const. art. 1, § 6).

This brings us to a consideration of the question whether the act is valid as a proper exercise of what, in its various ramifications, is known as the police power. This is the inherent and plenary authority of the State, within constitutional limits, to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to all rights under any form of contract. All contracts, whether made by the State itself, by municipal corporations or by individuals, are subject to be interfered with, or otherwise affected by subsequent statutes enacted in the *bona fide* exercise of the police power, and do not by reason of the contract clause of the Federal Constitution enjoy any immunity from such legislation. (12 C. J. 991, 992.) This power, however, may not be used as a cloak for the invasion of personal rights or private property. The courts should never hesitate to declare invalid a legislative act which contravenes constitutional rights. If this statute imposes an arbitrary restriction upon a citizen's right to pursue a lawful calling, and if it has no reference to life, health and property it should be condemned.

Every presumption is in favor of the constitutionality of legislative acts, and the case must be practically free from doubt before such an act should be declared unconstitutional. (*People* v. *Gillson*, 109 N. Y. 389.) The Legislature is invested with a wide discretion in determining whether a business or occupation should be barred to the dishonest or incompetent. (*Roman* v. *Lobe*, 243 N. Y. 51.) Generally it is for the Legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety, and while its measures are calculated, intended, convenient and appropriate to accomplish these ends, the exercise of its discretion is not subject to review by the courts. But they must have some relation to these ends. Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the Legislature is not final or conclusive. If it passes an act ostensibly for the public health, and destroys or takes away the property of a citizen, or interferes with his personal liberty, then it

is for the courts to scrutinize the act and see whether it really relates to and is convenient and appropriate to promote the public health. It matters not that the Legislature may in the title to the act, or in its body, declare that it is intended for the improvement of the public health. Such a declaration does not conclude the courts, and they must yet determine the fact declared and enforce the supreme law. (*Matter of Jacobs*, 98 N. Y. 98.) The right to preserve the public health, to protect the public morals and to provide for the public safety may interfere to some extent with both liberty and property, yet statutes to effectuate these ends have been repeatedly sustained by our courts.

The act under consideration expressly declares that its object is to safeguard life, health and property. Evidently it is adapted to accomplish those purposes. The practice of architecture demands learning, skill and integrity. The Legislature has the right to prescribe the qualifications of those engaged in this important work. The object of an examination is to ascertain whether applicants possess the necessary requirements. Manifestly the practice of this profession is of vital concern to people generally. The layman must place his trust and confidence in the architect he employs. The very fact that the architect's qualifications have been examined and certified by a responsible body is evidence of his fitness and furnishes some safeguard against unskilled work. In designing, planning and supervising the erection of large public and private structures, tragic indeed are the perilous results of incompetence and ignorance. I am convinced that this enactment should be upheld as a legitimate exercise of the police power.

The plaintiff is not entitled to maintain this action. The parties to this agreement contracted to do that which at the time the contract was made was lawful. The Legislature has since decreed that one of the parties is no longer qualified to perform. Performance by plaintiff is made impossible by legislative fiat.

From what has been said it logically follows that the court should not enjoin defendants from abrogating this contract. Plaintiff will not sustain irreparable injury thereby. Even if it be assumed that he has a valid agreement and is unlawfully discharged or prevented from performing it he has an adequate remedy at law for the recovery of his damages. (*Miller* v. *Warner*, 42 App. Div. 208; *Redican* v. *Interchangeable Magnetic Sign Co., Inc.*, 162 id. 803.) This pleading does not state a cause of action cognizable in a court of equity.

The temporary injunction order is, therefore, vacated and the complaint dismissed, with costs, with the usual leave, however, to plaintiff to plead over, if so advised.