## REAGAN *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 239.   Argued April 15, 1901.—Decided May 27, 1901.

In 1896, commissioners appointed by judges of the United States Court in the Indian Territory were inferior officers, not holding their offices for life, or by any fixed tenure, but subject to removal by the appointing power.

Commissioners appointed by that court prior to the act of March 1, 1895, were entitled to reappointment under that act, but were removable at pleasure unless at that date, or at the date of removal, causes for removal were prescribed by law.

As no causes for removal had been prescribed by law at the date of the removal of claimant in 1896, he was subject to removal by the judge of his district, and the action of that judge in removing him was not open to review in an action for salary.

APPELLANT filed his petition in the Court of Claims, October 13, 1897, and an amended petition October 27, 1899, seeking to recover salary as United States Commissioner in the Indian Territory, at the rate of $1500 per annum, from February 1, 1896, to September 30, 1899, aggregating $5375.

The findings of fact and conclusion of law were as follows:

"I. The claimant was, on the 25th day of April, 1893, appointed by the United States court for the Indian Territory United States commissioner within said Territory, under the provisions of section 39 of an act of Congress approved May 2, 1890, chapter 182, (1st Suppl. Rev. Stat. 737,) and upon the 1st day of March, 1895, the claimant was one of the present commissioners, then holding office under an existing appointment. On April 17, 1895, the following order was entered of record in the United States court in the Indian Territory, Southern District:

"'It appearing from the records of this court that the said William R. Reagan was a duly appointed, qualified and acting commissioner for the United States court for the Third Judicial Division of the Indian Territory, located at Chickasha, on

the 1st day of March, 1895, it is hereby ordered that in accordance with the act of Congress approved March 1, 1895, the said William R. Reagan be, and he is hereby, continued in office, and the bond hereinbefore recited be, and the same is, in all things approved and confirmed.   C. B. KILGORE, *Judge.*' "

" II. He continuously performed the duties and received the salary of said office until the 31st day of January in the year 1896, when the following letter was entered upon the records of the United States court in the Indian Territory, in the Southern District, by the Hon. Constantine B. Kilgore, judge of said court :

" ' IN CHAMBERS,
" ' ARDMORE, INDIAN TERRITORY, *January 31st*, 1896.

" ' HON. WILLIAM R. REAGAN, United States commissioner for the fourth commissioner's district in and for the southern district of the Indian Territory.

" ' *Sir :* I feel it my duty to declare the office of commissioner in that district vacant and to notify you that you are no longer United States commissioner for that district, and your successor will be named at once.

" ' There are many reasons which I could assign for my action in this behalf, but I will only suggest one now, that is, your age and the infirmities incident thereto render you, in my judgment, in many respects unfit for the office.

" ' Very respectfully, your obedient servant,
" ' C. B. KILGORE,
" ' *Judge U. S. Dist. Court, S. Dist.*'

" The letter was not sent to the claimant or served upon him. No other statement of cause was made. The claimant was given no notice of any charge against him. No hearing was allowed the claimant and no opportunity to submit proof in his defence.

" III. The claimant protested that said letter was insufficient to effect his removal, and duly served such protest upon the Hon. Constantine B. Kilgore, judge of said court.

" IV. On February 10, 1896, one John R. Williams, who had

been designated by said judge as United States commissioner in the claimant's place, came to claimaint's office with two armed deputy marshals, and, presenting his order of appointment, demanded possession of the dockets, books, and papers belonging to claimant's office as United States commissioner.

"V. The order of appointment of said Williams is as follows :

"'In CHAMBERS,
"' ARDMORE, INDIAN TERRITORY, *January 31st*, 1896.

"' John R. Williams, a resident of Ryan, Southern District of Indian Territory, is hereby appointed United States commissioner in and for the Fourth District of the Southern District of the Indian Territory.

"'Said appointment to take effect at once.

"'It is further ordered that said commissioner shall reside at Ryan, and that he shall hold court at Ryan and at the town of Duncan in said district until further ordered, the time to be divided so as to dispose of the business at both points, which time shall be determined upon hereafter.

"'C. B. KILGORE,
"'*Judge U. S. Ct., So. Dist.*'

"VI. The claimant protested and refused to recognize said Williams as his successor in said office, excepting so far as he was compelled thereto by the exercise of superior force on the part of the deputy marshals aforesaid and said Williams. Thereupon the claimant and said Williams joined in the following instrument of writing:

"'DUNCAN, INDIAN TERRITORY, }
    *Southern District.* }

"'This instrument of writing witnesseth:

"'That whereas C. B. Kilgore, judge of the United States court for the Southern District of the Indian Territory, on the 31st day of January, A. D. 1896, made, and caused to be entered upon the docket of his court at Ardmore, Indian Territory, an order declaring my office of United States Commissioner for the Ryan division of said district vacant; and at the same time appointing John R. Williams to be my successor in said office,

and the said Reagan having appealed to the courts of the United States from said order, on the ground that said order is contrary to the law:

"'Now, therefore, it is agreed by and between the parties hereto that said Reagan will turn over and surrender the dockets, books, and papers belonging to said office under protest, and that said Williams receives the same with the understanding that said Reagan yields no rights by so doing that he would otherwise have.

"Witness our hands this 10th day of February, A. D. 1896.

"'JNO. R. WILLIAMS.
"'WM. R. REAGAN.'

"VII. The claimant received a salary of $1500 per annum up to the 3d day of February, 1896, but since that date has not been paid said salary or any part thereof.

"VIII. Claimant took no other or further action to assert his claim to said office or to obtain a reversal of the action of Judge Kilgore until the institution of this proceeding.

"IX. From the 3d day of February, 1896, until the 7th day of October, 1897, John R. Williams, who was appointed by Judge Kilgore to said office in claimant's stead, exercised said office and was paid the salary thereof. On said date one Horace M. Wolverton was appointed as the successor of said John R. Williams by Hon. Hosea Townsend, United States judge for said district, and since that time has exercised said office and has been paid the salary thereof.

"X. From the 3d day of February, 1896, until the commencement of this action, the disbursing clerk of the Department of Justice paid to the persons who succeeded claimant to said office the salary of said office in the absence of any notice on the part of claimant that he claimed to be lawfully entitled to said office and the salary thereof, or any claim or demand on the part of claimant for the payment to him of such salary for said period of time or any part thereof.

*" Conclusion of Law.*
"Upon the foregoing findings of fact, the court decide, as a conclusion of law, that the petition be dismissed."

Judgment was thereupon rendered dismissing the petition, and the case was brought to this court by appeal. The opinion below is reported 35 C. Cl. 90.

*Mr. William B. King* for appellant.

*Mr. Assistant Attorney General Pradt* for appellee.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

Section 39 of the act of May 2, 1890, 26 Stat. 98, c. 182, provided:

"That the United States court in the Indian Territory shall have all the powers of the United States Circuit Courts or Circuit Court judges to appoint commissioners within said Indian Territory, who shall be learned in the law, and shall be known as United States commissioners; but not exceeding three commissioners shall be appointed for any one division, and such commissioners when appointed shall have, within the district to be designated in the order appointing them, all the powers of commissioners of Circuit Courts of the United States.

"They shall be *ex officio* notaries public, and shall have power to solemnize marriages.

"The provisions of chapter ninety-one of the said laws of Arkansas, regulating the jurisdiction and procedure before justices of the peace, are hereby extended over the Indian Territory; and said commissioners shall exercise all the powers conferred by the laws of Arkansas upon justices of the peace within their districts; but they shall have no jurisdiction to try any cause where the value of the thing or the amount in controversy exceeds one hundred dollars."

The act of March 1, 1895, 28 Stat. 693, c. 145, provided for additional judges of the court, and by section 4:

"That each judge of said court shall have the powers conferred by law upon the United States Circuit Courts to appoint commissioners within the district in which he presides, who, at the time of their appointment, shall be duly enrolled attorneys of some court of record of the United States or of some State,

and shall be competent and of good standing, and shall be known as United States commissioners, but not exceeding six commissioners shall be appointed for any district hereinbefore constituted:

" *Provided*, That the present commissioners shall be included in that number and shall hold office under their existing appointments, subject to removal by the judge of the district where said commissioners reside, for causes prescribed by law. The judge for each district may fix the place where, or the time when, each commissioner shall hold his regular terms of court.

" The order appointing such commissioners shall be in writing and shall be spread upon the records of one of the courts of the district for which they are appointed; and such order shall designate, by metes and bounds, the portion of the district for which they are appointed. They shall have all the powers of commissioners of the Circuit Courts of the United States.

" They shall be *ex officio* notaries public and *ex officio* justices of the peace within and for the portion of the district for which they are appointed, and shall have the power as such to solemnize marriages."

Appellant was appointed a commissioner April 25, 1893, and was such on March 1, 1895. In view of the proviso he was continued in office until January 31, 1896, when he was removed by the judge of the district where he resided, and another person appointed.

He now contends that the removal was void, because the cause assigned for the action of the judge was not a " cause prescribed by law," and because he was given no notice of any charge against him, and no hearing, contrary to the statute.

The commissioners appointed by the judges of the United States Court in the Indian Territory are inferior officers, not holding their offices for life, or by any fixed tenure, and they fall within the settled rule that the power of removal is incident to the power of appointment. *Ex parte Hennen*, 13 Pet. 230, 258; *Parsons* v. *United States*, 167 U. S. 324. But it is assumed that because of the language of the proviso, commissioners appointed by the court prior to March 1, 1895, formed an

exceptional class from commissioners appointed by the judges of that court after that date, and hold office until they are removed for causes prescribed by existing law, or until Congress passes a law defining such causes. The latter view may be rejected at once, for the words " causes prescribed by law," manifestly relate to causes prescribed when the act was approved, or at least when the removal was made. Not only is there nothing here to give them any other meaning, but it cannot be presumed that Congress intended to forbid the exercise by the judges of their power in the matter of these appointments in the instance of these particular commissioners, or to provide that they should hold office during life, or until Congress should specify causes subjecting them to removal, while all other commissioners were removable at the will of the power appointing them.

The proviso was enacted apparently out of abundant caution lest the legislation in respect of the United States Court in the Indian Territory might operate in itself to turn the then commissioner out of office, and if Congress had intended in addition that they should hold office free from the rule applicable to others, we think that the intention would have been plainly expressed.

The inquiry is therefore whether there were any causes of removal prescribed by law, March 1, 1895, or at the time of the removal. If there were, then the rule would apply that where causes of removal are specified by constitution or statute, as also where the term of office is for a fixed period, notice and hearing are essential. If there were not, the appointing power could remove at pleasure or for such cause as it deemed sufficient.

The suggestion that the proviso refers to such causes as courts might recognize as just will not do, for " prescribed by law " is prescribed by legislative act, and removal for cause, when causes are not defined nor removal for cause provided for, is a matter of discretion and not reviewable.

It does not appear that any causes for removal of these court officers were ever affirmatively specified by Congress; but it is said that Congress had prescribed such causes by the adoption

in the Indian Territory of certain laws of Arkansas. By section thirty-one of the act of May 2, 1890, some of those laws were put in force in the Indian Territory, and by section thirty-nine the commissioners were authorized to exercise all the powers conferred by the laws of Arkansas on justices of the peace within their districts, and the provisions of chapter ninety-one of those laws regulating the jurisdiction of and procedure before justices of the peace were extended to that Territory. By the act of March 1, 1895, these were reënacted, and chapters forty-five and forty-six of Mansfield's Digest, treating of criminal law and criminal procedure, were also put in force there.

The argument is that the effect of these provisions was to put the commissioners in the place of justices of the peace in Arkansas, and that consequently the causes prescribed by law for the removal of justices of the peace must be taken as prescribed by law as causes for the removal of commissioners.

In our opinion this conclusion does not follow. In order to clothe the commissioners with the powers pertaining to justices of the peace, this was conveniently accomplished by reference, but that did not convert these officers of the United States Court in the Indian Territory into justices of the peace or change the relations between them and the judges of that court. Justices of the peace in Arkansas by state constitution and laws hold office for two years, and cannot be removed except for cause, and on notice and hearing. The commissioners hold office neither for life, nor for any specified time, and are within the rule which treats the power of removal as incident to the power of appointment, unless otherwise provided. By chapters forty-five and forty-six, justices of the peace on conviction of the offences enumerated are removable from office, but these necessarily do not include all causes which might render the removal of commissioners necessary or advisable. Congress did not provide for the removal of commissioners for the causes for which justices of the peace might be removed, and if this were to be ruled otherwise by construction, the effect would be to hold the commissioners in office for life unless some of those specially enumerated causes became applicable to them.

We agree with the Court of Claims that this would be a most unreasonable construction and would restrict the power of removal in a manner which there is nothing in the case to indicate could have been contemplated by Congress.

If causes of removal had been prescribed by law before the removal of appellant that would have presented a different question, but as there were then none such, the proviso did not operate to take him out of the rule expounded in *Ex parte Hennen,* and the mere fact that in that particular this part of the proviso was inoperative as to him did not change the result.

*Judgment affirmed.*